## Samuel Wetherill et al., Admrs., Plffs. in Err., *v.* Commonwealth for Use of Joseph Fornance, Admr., et al.

Sureties of an administrator *c. t. a.* who makes sale of lands of the deceased in virtue of a power conferred by the will are liable for his failure to account for purchase money received.

Power to sell land, conferred by a will upon the executor named, construed; and held to pass to an administrator appointed to execute the will, and to be sufficiently extensive to authorize him, as against his sureties, to sell lands belonging to the estate.

(Decided October 5, 1885.)

Error to the Common Pleas of Berks County.    Affirmed.

The facts are stated in the opinion.

*G. R. Fox, Edward J. Fox* and *Cyrus G. Derr,* for plaintiffs in error.—The sureties of an administrator *de bonis non* are an-

---

Cited in Com. v. Kean, 19 Pa. Super. Ct. 576, 582; Pennsylvania Co. v. Swain, 21 Pa. Co. Ct. 178, 7 Pa. Dist. R. 406.

NOTE.—It is definitely settled that whenever a power is given by will to sell real estate, with a view to the distribution of the proceeds among legatees, such power may be exercised by the administrator *de bonis non* with will annexed.    Lantz v. Boyer, 81 Pa. 327.    Administrators *c. t. a.* have authority to sell as well when a mere power is given to the executor as when there is an absolute direction.    Evans v. Chew, 71 Pa. 47.    The sureties on the bond of such administrator are liable, even if he be improperly appointed, having acted under the letters granted to them.

swerable for the proceeds of real estate sold by him by virtue of an authority to sell contained in the will of the testator. Hartzell v. Com. 42 Pa. 459.

It is impossible by any equitable construction to stretch the word beyond the letter against a surety who knows the exact extent of the responsibility which he contracted, according to the letter of his obligation, and who could know it by no diligence, provided it were to be understood by any other standard than the letter. Reed v. Com. 11 Serg. & R. 441.

If the surety's engagement relates to a particular office, it extends only to such things as were included in the office when the engagement was entered into. Wylie v. Gallagher, 46 Pa. 205.

The law will not create a liability against sureties which they have not incurred by their consent. Swanson v. Ball, Hempst. 39.

A surety cannot be held liable beyond the terms of his obligation. Com. v. Simonton, 1 Watts, 310.

Cases need not be cited to show that sureties cannot be held beyond the fair scope of their engagements, as intended by the parties when undertaken. Dedham Bank v. Chickering, 4 Pick. 340, citing Springfield Bank v. Merrick, 14 Mass. 322.

Sureties on an administration bond are not liable for the acts of the administrator confessing judgment and allowing the real estate of the decedent to be sold under it and the money misappropriated. Reed v. Com. 11 Serg. & R. 441.

An administrator with the will annexed may execute a power to sell, in order to bring the land into a course of administration, but not to execute a trust for a collateral purpose. Ross v. Barclay, 18 Pa. 183, 55 Am. Dec. 616.

An administrator with the will annexed cannot sell land for convenience of partition. Waters v. Margerum, 60 Pa. 39.

Powers given to executors as such *virtute officii* do not extend to a power of sale collateral to or unconnected with their duties as executors. Evans v. Chew, 71 Pa. 50.

There is no power given in this will to the executor to sell for purposes of distribution, as in Lantz v. Boyer, 81 Pa. 325.

Shalter's Appeal, 43 Pa. 83, 82 Am. Dec. 552. And even if the bond was in the form of an original administration bond as given in cases of intestacy. *Ibid.* Though there is but one surety upon such a bond, he is liable. Com. v. Miller, 195 Pa. 230, 45 Atl. 921.

In Maus v. Maus, 80 Pa. 194, it was decided that the trust to rent the land did not vest in the administrator *c. t. a.*

In Reed v. Com. 11 Serg. & R. 441, the court says: The legislature, by using the words of the English statute, "seem to have restrained the security of the bond to the administration of the 'goods, chattels, and credits of the said deceased, at the time of his death.' "

The incongruity of such a judgment is but.imaginary. There is certainly no difficulty in enforcing it, and the tendency of the law now is to abolish such technicalities. Dingman v. Amsink,. 77 Pa. 114–118.

Leonard v. Parker, 72 Pa. 236. A name having been added without notice to the party, it was stricken off subsequently for that reason. Held to be error, and the name ordered to be reinstated.

In 2 Troubat & H. Pr. 384, § 2060, it is said that the party first suing on an official bond is entitled to the whole penalty, if his claim be so much.

It is an established principle that the person who first sues. and obtains judgment on an official bond is entitled to take the whole of the penalty, if his demand amounts to so much, in exclusion of every other claimant. Dallas v. Chaloner, 3 Dall.. 501, 1 L. ed. 696.

The same doctrine was declared in Hazlehurst v. Dallas, 4. Dall. 106, 1 L. ed. 761; and in Christman v. Com. 17 Serg. & R. 381, it was decided that the person who first sues on an official. bond of a sheriff is entitled to have his judgment first paid.

*Henry A. Muhlenberg* and *Geo. F. Baer,* for defendants in. error.—The assets were not marshaled because of the litigation as to the forest improvement lands. Wms. Exrs. 1713, 1716,. 1718, 1719; Witman v. Norton, 6 Binn. 395; WOODWARD, Ch.· J., in Gallagher's Appeal, 48 Pa. 122, and cases cited in said opinion; Jarman, Wills, Am. ed. 527–537.

The sureties of an administrator *de bonis non* are answerable· for the proceeds of real estate sold by him by virtue of an authority to sell contained in the will of the testator. Hartzell v. Com. 42 Pa. 459. It is not denied that the sureties in an administration bond given by an administrator *de bonis non* with the will annexed in proper form are answerable for the proceeds of real estate sold by him by virtue of an authority to sell con-

tained in the will of the testator.    They, the sureties, knew they
were becoming the sureties of an administrator *de bonis non*
with the will annexed.    The final decree of the orphans' court
affirmed the propriety of the decision and charged the adminis-
trator with the proceeds, and this is conclusive upon him and
upon his sureties.    Com. v. Forney, 3 Watts & S. 353; Zeigler
v. Sprenkle, 7 Watts & S. 175.

Even though the form of the bond be defective, the sureties
are liable.    Ziegler v. Sprenkle, 7 Watts & S. 175; Shalter's
Appeal, 43 Pa. 83, 82 Am. Dec. 552; Foster v. Com. 35 Pa.
148.    The case of Reed v. Com. 11 Serg. & R. 441, is not in
point.

In the case of Lantz v. Boyer, 81 Pa. 325, Judge SHARSWOOD,
laying down a principle of law fully established, said:    "It may
now be considered as definitely settled, that whenever a power
is given by will to executors to sell real estate, with a view to the
distribution of the proceeds among legatees, such power belongs
to them *virtute officii,* and may be exercised by administrators
*de bonis non* with the will annexed, under 67th section of the
act of February 24, 1834, Pamph. Laws, 86, which provides
that "all and singular, the provisions of this act, relative to
the powers, duties, and liabilities of executors, are hereby ex-
tended to administrators with a will annexed."

The holder of a joint and several bond may elect to bring a
separate action against each obligor, or a joint action against all.
If he proceeds by separate actions, the executor of a deceased
defendant, as well as the survivor, continues liable; but if he
joins all the parties, and one of them dies pending the suit, the
remedy against the assets of the deceased is terminated, and the
survivor alone is responsible.    Miller v. Reed, 27 Pa. 248, 67
Am. Dec. 459; Walter v. Ginrich, 2 Watts, 204.

It is a plain principle in equity, that whenever a man who
had originally a legal remedy impairs it by his own neglect or
omission, he shall be postponed to another more vigilant claim-
ant.    Dallas v. Chaloner, 3 Dall. 501, 1 L. ed. 696.

OPINION BY MR. JUSTICE STERRETT:

In June, 1857, letters of administration *de bonis non cum
testamento annexo* on the estate of Jacob W. Seitzinger were is-
sued to his son Jacob J. S. Seitzinger, who gave bond in the
penal sum of $20,000, with William Wetherill and James S.

Hill as sureties. The administrator's first account was filed in 1868, and his final account in 1873. In the latter he charged himself as follows:

Bond and mortgage of the Forest Improvement
Company, credited in first account, which has since
been paid ................................ $22,500.00

Interest on said bond and mortgage to May 11,
1868, when the same was paid................ 15,948.96

Due bills on hand and credited in his first ac-
count..... .............................. 3,094.16

Loan to John H. Swaby, credited in his first ac-
count....................................... 700.00

Interest received on money loaned, invested, and
money in his hands......................... 6,123.03

Total .................................. $48,366.15

After taking credit, among other things, for $10,143,63, shown to be due him by his first account, the balance for distribution was over $25,000. The auditor appointed to distribute this balance reported a schedule of distribution, in February, 1879, and the case was so proceeded in that a final decree was made and afterwards affirmed by this court. In the meantime the accountant became insolvent, and the distributive shares of the heirs remained unpaid. In September, 1882, this action of debt on the administration bond was brought in the name of the commonwealth to use of Joseph Fornance, administrator, etc., against James S. Hill, one of the sureties, and the administrators of William Wetherill, the other surety, who died about ten years before. The record was amended by striking therefrom the name of James S. Hill, one of the defendants, thus leaving the personal representatives of William Wetherill sole defendants. This action of the court has been complained of, but, as we think, without any just cause.

Shortly thereafter, the other distributees made application and became parties plaintiff to the suit. The original use plaintiff having elected to try his case separately, a verdict was rendered in favor of the commonwealth for $20,000, penalty of the bond, and the sum due Joseph Fornance, administrator, etc., was found to be $7,162.75, the full amount awarded him by the decree of distribution, with interest from date thereof. Sub-

sequently, the case as to claims of the other use plaintiffs was tried, same verdict rendered in favor of the commonwealth, and the respective amounts due the beneficial plaintiffs fixed at about 89 per cent of the sums awarded them respectively by the decree of distribution, without interest. Judgments having been entered on the verdicts, these writs of error were taken thereto. The cases were argued together and are so closely related that they may be disposed of in the same way.

The main question involved in the several specifications of error is whether the sureties on the administration bond are liable for the admitted default of their principal in not paying to the distributees the several sums awarded to them by the decree of the orphans' court above referred to.

While plaintiffs in error concede the correctness of the general principle, recognized in Hartzell v. Com., 42 Pa. 459, that the sureties of an administrator *de bonis non* are answerable for the proceeds of real estate sold by him by virtue of a testamentary power of sale, it is contended the administrator in this case had no such authority to dispose of the lands conveyed by him to the Forest Improvement Company, and from which, as shown by his account, the distributed balance was realized. In affirming the first point submitted by use plaintiff, the learned judge charged: "That, inasmuch as the balance with which" the administrator *de bonis non* "is charged by the auditor is the proceeds of real estate, the sureties on the bond are not liable for the payment of such balance, unless authority was conferred by the will of Jacob W. Seitzinger to make sale of said real estate;" but in refusing to affirm his second to fifth points, inclusive, and in charging the jury as complained of in the fifth to ninth specifications, inclusive, he held, in substance, that under the undisputed facts in this case the sureties were liable. In this we think he was right. The very able and ingenious argument of the learned counsel for plaintiffs in error has failed to convince us to the contrary.

In the first place, upon the face of the records given in evidence, the commonwealth has a prima facie case. The rendition of an account by the administrator, in which he charges himself with the fund in question, and the action of the court confirming the same and distributing the balance, in connection with the admitted default of the administrator in not paying out the money in accordance with the decree of distribution, are prima facie sufficient to fix his sureties for the devastavit.

Aside from all that, however, the discretionary powers of sale contained in the will of Jacob W. Seitzinger are not only very broad and ample, but it does not appear that they had been exhausted when the conveyance was made to the Forest Improvement Company in 1857. It appears that, prior to that date, the title to the land embraced in the conveyance was in controversy, and the conveyance was made in pursuance of a compromise of the then pending litigation. The power of the administrator to effect a compromise of the disputed claim, if made and carried out in good faith and for the best interests of the estate, cannot be questioned. The authority vested in him for that purpose is full and complete. After disposing of certain portions of his estate, the testator devises the residue in the following words: "All the rest, residue, and remainder of my estate, real and personal, including what may be purchased or acquired hereafter in my lifetime, or after my death by my executors as aforesaid, and the reversion expectant upon my wife's death, of the seventy acres of land first above mentioned, I devise and bequeath to my executors or executor for the time being, his or their heirs, executors and administrators, in trust, by sales, public or private, or mortgages thereof, or from the rents and profits, interest and income thereof, while unsold, at his or their discretion, at such times and in such manner as he or they may deem proper, to receive and collect such sum or sums of money as he or they may deem necessary for the payment of all my debts and the discharge of all encumbrances upon my real estate of money, and the raising of all or any sum or sums of money that may be required for the payment of any legacies; or for any of the purposes mentioned in this my will." He also provides, in the same connection, "That no persons purchasing from or lending on mortgage as aforesaid, to my executors, shall be required to see to the necessity or occasion for, or propriety or expediency of, any sales or mortgages which they may see proper to make; . . . it being my will that their conveyances, absolute or defeasible, shall in all cases be effectual; and that their receipts and acquittances shall in all cases be final discharges on any sale or sales of my real estate, to be made as aforesaid." From these and other clauses in the will, it is very evident the testator intended to give his executors not only full power and authority to sell for any of the purposes named, but also the wildest discretion in the ex-

ercise of the powers thus vested in them. By virtue of the act of February 24, 1834, the powers and duties of the executors are extended to the administrator with the will annexed.

. In a subsequent clause of his will, the testator declared: "It is my will, as soon as my debts shall have been paid and all encumbrances upon my real estate discharged, the whole of my remaining residuary estate shall be inventoried and appraised by three persons to be appointed by my executors," etc. Inasmuch as an appraisement under this clause appears to have been made, it is contended testator's debts must have been paid and all encumbrances on his real estate discharged, and, therefore, the powers of sale were exhausted. There would, perhaps, be force in this position if it did not appear affirmatively that such was not the fact. The record No. 176, April Term, 1847, Keim v. Seitzinger, in which the executors of the testator and afterwards the administrator *de bonis non,* were substituted as defendants, shows a large claim against the estate which was not finally settled until several years thereafter. The prematurely prepared inventory and appraisement of the "remaining residuary estate" could not have the effect of depriving the administrator of the power and authority vested in him by the provisions of the will.

Without pursuing the subject further, we think the learned judge was fully warranted in refusing to affirm defendant's second to fifth points inclusive, and in charging the jury as he did on the trial of the first issue.

Several errors are assigned to the rulings of the court on the trial of the second issue, in none of which do we think plaintiffs in error have just reason to complain. They submitted a point on which the court was requested to charge: "That if plaintiffs are entitled to recover at all, each plaintiff is entitled to recover his *pro rata* share of the sum of $12,837.25, being balance of penalty of the bond in suit, remaining after the payment of the . . . judgment in favor of Joseph Fornance, administrator."

This point was rightly refused. The verdict should have ascertained the amount due each plaintiff, with interest from the date of the decree in the orphans' court. The judgment in favor of the commonwealth would, of course, be for $20,000 and costs, and could in no event exceed that sum; but each of the use plaintiffs, the original use plaintiff as well as those who

afterwards became parties to the suit, were entitled to have the amounts due them, respectively, ascertained by the jury, as though the penalty was sufficient to cover all. Inasmuch, however, as the aggregate claims of the use plaintiffs exceeds the penalty of the bond, the court, in the exercise of its equitable powers, should so control the execution or executions, if any are issued, as not to permit either of them to collect or receive more than his *pro rata* share of the $20,000. Neither of the use plaintiffs has any equity that is superior to that of the others.

It follows, from what has just been said, that the court erred in that portion of the charge covered by the second specification, but the error is one of which defendants below have no reason to complain. They are not prejudiced thereby.

There was no error in rejecting the deed referred to in the third specification; nor, for reasons suggested by the court below, was there any error in rejecting the several due-bills mentioned in the fourth specification.

The judgment in each case is affirmed.